Gary L. QUIGG, Petitioner,

v.

Roger W. CRIST, Warden of the Montana State Prison, Respondent.

No. CV–76–97–BLG.

United States District Court,
D. Montana,
Billings Division.

Dec. 27, 1978.

---

546

Gary E. Wilcox, Billings, Mont., for petitioner.

J. Mayo Ashley, Asst. Atty. Gen., for the State of Montana, Helena, Mont., for respondent.

## MEMORANDUM OPINION AND ORDER

BATTIN, Chief Judge.

Gary L. Quigg, the petitioner in this case, seeks a writ of habeas corpus based on various constitutional errors during trial. Previously Quigg petitioned the Court for a writ of habeas corpus based on the legality of search warrants. *Quigg v. Estelle*, No. 71–1007. An appeal of this Court's refusal to grant the relief was taken to the Ninth Circuit and a writ of certiorari was sought from the United States Supreme Court, both without success.

Quigg was convicted of first degree murder in Yellowstone County in April, 1969. The conviction was affirmed by the Montana Supreme Court. *State of Montana v. Quigg*, 155 Mont. 119, 467 P.2d 692 (1970).

Quigg exhausted his state court remedies in this case by his appeal to the Montana Supreme Court for post-conviction relief. *In re Quigg*, 168 Mont. 512, 544 P.2d 441 (1976).

The facts leading up to Quigg's conviction are as follows. Lee Robbins, a Billings drug salesman, was found murdered on April 8, 1968. Police investigation into the murder revealed little evidence until August. After a bar near Park City, Montana, was burglarized, it was discovered that the bullets which killed the guard dog matched the bullet which killed Lee Robbins. The gun was later located in a Billings pawn shop and traced to Quigg. Gary L. Quigg and two others were arrested for the murder of Lee Robbins, but only Quigg was charged.

■ State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962).

## I.

### Question Regarding Petitioner's Post-Arrest Silence

In refuting his possession of the murder weapon in this case, Quigg testified that he had discovered the gun in a paper sack left in a vacant lot by three Indians.

The prosecutor in cross-examining Quigg asked a series of questions about conversations concerning the gun that Quigg might have had with his friends shortly after he claimed to have made the discovery. Ending that series of questions, the prosecutor asked:

Q: And you didn't tell the police when you were arrested about seeing those Indians put the sack in the lot?

A: No, I didn't.

Quigg claims this question was a comment about his right to remain silent and a violation of his Fifth and Fourteenth Amendment rights. The state argues that this line of questioning was merely an effort to cast doubt on the credibility of Quigg's testimony, not a comment on Quigg's silence.

Recent cases have found a prosecutor's use of an arrestee's silence in impeachment of an explanation subsequently given to violate the Due Process clause of the Fourteenth Amendment. The Court found post-arrest silence to be ambiguous and believed it would be fundamentally unfair to allow that silence to be used to impeach subsequent testimony after the arrestee was impliedly assured that silence would carry no penalty. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *See also, United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Fowle v. United States*, 410 F.2d 48 (9th Cir. 1969).

■ But even where the prosecution has committed constitutional error by inquiring into post-arrest silence, the error may be harmless error. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), requires that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

Considering a case where the prosecutor made two improper comments during the closing argument regarding the defendant's refusal to testify, the Ninth Circuit found harmless error. The Court applied the test of *Anderson v. Nelson*, 390 U.S. 523, 524, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968). Where comments were not extensive, an inference of guilt from silence was not stressed to the jury as a basis for conviction, and there was no substantial evidence which favored an acquittal, the error was harmless. *United States v. Sigal*, 572 F.2d 1320, 1323 (9th Cir. 1978) (citations omitted). *See also, United States v. Wycoff*, 545 F.2d 679 (9th Cir. 1976).

In *United States v. Lopez*, 575 F.2d 681, 685–686 (9th Cir. 1978), the Court found plain error to allow review of prosecutor's statements regarding the defendant's silence. But on review, the Court found the statements to be harmless error applying the *Anderson v. Nelson* test.

■ In this case, the Court takes notice of the error made by the prosecutor in inquiring into the defendant's post-arrest silence as a plain error. But applying the *Anderson v. Nelson* test as accepted by the Ninth Circuit, the prosecutor's error is found to be harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The comment regarding the defendant's post-arrest silence was merely a single question; the comment does not appear to have been stressed to the jury as a basis for conviction and there was no substantial evidence favoring an acquittal.

## II.

### Newly Discovered Evidence

The state presented evidence during the trial that tended to link Quigg with the Robbins car. The state's theory was that after the murder Quigg took the decedent's car and drove to a parking lot a few blocks from the house where he was living. The car was found on the vacant lot the morning after the murder.

While the jury was deliberating, four previously unknown witnesses came to the attention of the defense attorney. Two of these witnesses' testimony is not material to this appeal. The other two witnesses had seen the Robbins car come into the lot on the night of the murder and saw the driver leave the car. Counter-affidavits to these two witnesses were filed by the police who had investigated the facts and questioned the individuals.

The trial judge heard the motion for a new trial and refused to grant it. In its first review of the case, the Montana Supreme Court examined the statements and found that they added no material evidence likely to produce a different result. *State v. Quigg*, 155 Mont. 119, 147, 467 P.2d 692 (1970).

■ The test to be applied in determining whether to issue the writ of habeas corpus is whether the new evidence is material and such that, if presented to a jury at a new trial, would probably produce an acquittal. *Shuler v. Wainright*, 341 F.Supp. 1061, 1069 (Fla.1972), *vacated* 491 F.2d 1213 (5th Cir. 1974). The newly discovered evidence must bear upon the constitutionality of the petitioner's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus. *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (dictum).

The petitioner argues that the statements of the witnesses who had seen the Robbins car being left in the vacant lot in conjunction with the aiding and abetting instruction establish a violation of the petitioner's Fourteenth Amendment due process rights. The state urges that the decision was properly made within the discretion of the trial judge.

■ The depositions of the two newly discovered witnesses are before this Court and have been examined, as the affidavits were examined by the Montana District Court and Supreme Court. The statements establish that the two witnesses saw the Robbins car being left at the vacant lot and saw the driver hurriedly leave. They do not identify the driver of the car. Such statements do not establish that the petitioner would probably be acquitted if they were presented in a new trial. It is not fundamentally unfair to deny the petitioner a new trial under these circumstances.

## III.

### Aiding and Abetting Instruction

The court in the second trial gave an instruction characterized by the petitioner as an aiding and abetting instruction. The petitioner contends that this instruction allowed the presentation of a case on one factual theory but allowed the jury to decide the case on a different legal theory, thereby infringing on his Fourteenth Amendment due process rights. No one other than Quigg was ever charged with the murder. In conjunction with the newly discovered evidence on which the trial court refused to grant a new trial, the petitioner claims the error reaches constitutional magnitude.

The state argues that at the time Quigg was convicted Montana did not recognize any distinction in punishment for principals or for those who aid and abet in the crime. Because Quigg was convicted not of aiding and abetting, however, but of first degree murder, the crime with which he was charged, the state argues that the petitioner has failed to show that any substantial right has been impaired.

■ Errors in the instructions to the jury raise questions of state law and seldom rise to the level of denial of due process in a habeas corpus action. *La Brasca v. Misterley*, 423 F.2d 708, 709 (9th Cir.), *cert. denied*, 400 U.S. 838, 91 S.Ct. 77, 27 L.Ed.2d 72 (1970). The Montana Supreme Court has determined that no error was established in giving the challenged instruction which it characterized as the usual felony murder instruction. *State v. Quigg*, 155 Mont. at 133, 467 P.2d 692 (1970).

■ The trial court's instruction to the jury cannot constitute a basis for federal habeas corpus relief, unless this error was so prejudicial as to render the trial "fundamentally unfair." *Myers v. Rhay*, 577 F.2d 504, 511 (9th Cir. 1978); *Egger v. United States*, 509 F.2d 745, 749 (9th Cir. 1975); *Pleas v. Wainright*, 441 F.2d 56, 57 (5th Cir. 1971) (citations omitted).

■ The instruction given by the trial court was not so prejudicial as to render the trial fundamentally unfair. The instruction reads: "You are instructed that all persons concerned in the commission of a crime, and whether they directly commit the act constituting the offense, or aid and abet in its commission, are principals in any crime so committed. However, there is no inference whatsoever intended by the Court as to the guilt or innocence of the Defendant by the giving of this instruction, for that is solely and exclusively the duty of the Jury to so decide." No federal constitutional error is shown.

## IV.

### Intimidation of Witnesses

Two brothers who were prosecution witnesses in tracing the possession of the gun to the petitioner, Clyde and Z. P. Eldridge, raised during their testimony in court chambers questions of possible police intimidation. The court moved out of the hearing of the jury when Clyde indicated he wanted to ask a question. In chambers, Clyde testified about a tape recording on which the speaker reported threats made by Quigg against the Eldridges. The court asked questions of Clyde at that time to determine whether he had testified truthfully and whether he testified under coercion or threat. Clyde responded that he had testified truthfully and that he wasn't afraid. When the court reconvened, Z. P. was called to the stand. Before he was sworn, he indicated he would like to have the advice of an attorney. The court again recessed. In chambers, Z. P. repeated the testimony of Clyde that a member of the Billings Police Department had played a tape recording on which the speaker made threats against the Eldridges. Z. P. testified that he was not afraid of the police or of Quigg and that he would testify to the truth in court.

The defense moved for a mistrial because substantial rights of the defendant had been jeopardized by intimidation of the Eldridges by the Billings Police Department. The prosecution resisted the motion for the mistrial and the court denied the motion.

The trial judge determined from the in chambers questioning of the Eldridges that they were not afraid of either the police or of Quigg and that statements on the witness stand would be the truth. Their statements were used for the limited purpose of tracing the possession of the Robbins gun from the pawn shop back to Quigg.

■ Police misconduct toward the Eldridges was not established in this case. But even where police misconduct, however reprehensible, could be established, it would not be a ground for federal habeas corpus if it did not contribute to the conviction. *Miller v. Eklund*, 364 F.2d 976, 978 (9th Cir. 1966).

■ The record in this case establishes that the Eldridges were not intimidated, did not feel threatened and that they would testify truthfully. Their testimony was used for the limited purpose of tracing the possession of the murder weapon from the pawn shop to Quigg. Under these facts, there seems to have been no intimidation and the police actions in playing the recording to the Eldridges do not seem to have contributed to the conviction.

## V.

### Witnesses' Actions

The court recessed to its chambers after Clyde Eldridge attempted to make a statement while on the witness stand. The court did not allow the statement. Proceedings were held in chambers to determine what Clyde wished to say.

Before Z. P. Eldridge was sworn or took the witness stand, he stated that he would like to talk with an attorney. According to the statements made by the prosecutor and defense counsel, there was a conversation between Z. P. and the court. Then proceedings were held in chambers. The court denied a mistrial based on Z. P.'s action because Z. P. had gone to the clerk's desk with his back to the jury and in the opinion of the court, the jury which was fifteen feet away, did not hear the limited statement made by Z. P. Eldridge.

After an additional witness was called, a question regarding the swearing-in of Z. P. Eldridge was delivered to the court from the jury. The court answered that there had been several preliminary legal questions one of the attorneys had wanted to ask, and that Z. P. had been sworn in in chambers, which was not uncommon.

There is no indication in the transcript of the proceedings that Z. P. Eldridge was ever sworn in as a witness.

The petitioner does not specify any specific harm which resulted from these witnesses' actions. Before the federal court will grant collateral relief, there must be a showing that fundamental constitutional rights have been impaired.

■ The trial judge determined and stated in the record that the jury could not have heard the comments of Z. P. Eldridge when he declined to be sworn before a conference with an attorney. There is no allegation that the testimony of Z. P. Eldridge was any different from his testimony at the first trial when presumably he was sworn as a witness. On these facts there is no basis for a finding that the petitioner's constitutional rights have been impaired in such a way as to entitle him to habeas corpus relief.

## VI.

### Failure to Allow Testimony

Defense counsel called Donn Peden as a defense witness to testify to statements made by Robbins that previous threats had been made on Robbins' life. The defense believed that because of the circumstantial evidence in this case, this testimony would indicate that it was likely that someone other than Quigg had killed Robbins.

The prosecution objected to the questioning of Peden about statements made by Robbins on the grounds that such testimony would be hearsay. The court sustained the objection.

■ The testimony of Peden as to Robbins' statements was hearsay and was not properly admissible as evidence. This does not infringe on the petitioner's Sixth Amendment right to compulsory process for obtaining witnesses or Fourteenth Amendment due process.

■ The right of an accused in a criminal case to due process is, in essence, the right to a fair opportunity to defend against the state's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers*, the Supreme Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.*, at 302, 93 S.Ct. at 1049. In that case, the Court determined, *inter alia*, that the defendant

had been denied a fair trial by strict application of the state's rules of evidence when the hearsay statements were made under circumstances that provided considerable assurances of their reliability.

Quigg's opportunity to defend himself against the state's accusation was not denied by the exclusion of hearsay testimony. Quigg had established an alibi defense. Any proof of threats against Robbins did not directly affect the ascertainment of guilt in this case.

## VII.

### Prosecutor's Remarks During Closing Statements

The closing arguments in this case were either not taken down by the court reporter or have not been transcribed. The petitioner petitioned the district court for a copy of the closing argument but the petition apparently was not considered. The petitioner filed a Petition for a Writ of Mandamus with the Montana Supreme Court but the writ was denied.

The petitioner alleges that the prosecutor stated, "I couldn't sleep at night knowing that this man is loose walking the streets—and I don't think you could either", and that he indicated that it certainly wasn't the police who were lying in the case. The petitioner asserts that these remarks were prejudicial and inflammatory and violated his Fourteenth Amendment rights.

■ The Ninth Circuit Court of Appeals has indicated that the court reporter's failure to record the closing arguments of counsel does not entitle the petitioner to collateral relief from his conviction. "[F]ailure to record counsel's summation, without more, though error, 'is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure', . . . and failure to record counsel's summation therefore would not, of itself, require the granting of collateral relief." *Brown v. United States,* 314 F.2d 293, 295

n.1 (9th Cir. 1963) (citations omitted). Since failure to report alone is not of sufficient magnitude to require reversal of the conviction on collateral attack, neither is the failure to transcribe alone sufficient to require the collateral relief.

■ However, if there is reason to believe that appellant's rights in other respects were denied, then the absence of the record may be a significant factor in determining whether in all the circumstances there had been a denial of fundamental fairness. *Id. See also, Macomber v. Gladden,* 304 F.2d 487 (9th Cir. 1962); *United States v. Piascik,* 559 F.2d 545 (9th Cir. 1977).

The state argues that there is no indication that defense counsel objected to the comments when they were made and that these comments cannot be shown to have influenced the jury.

■ Because the state has not provided the petitioner with a transcript of the closing arguments, his allegations of prosecutorial misstatements can be recognized even without any proof of objection by defense counsel.

■ Prosecutorial comment must be judged in light of the evidence as a whole. *United States v. Lopez,* 575 F.2d 681 (9th Cir. 1978). The standard to be satisfied in determining whether there has been prosecutorial misconduct sufficient to require a new trial is whether it is more probable than not that the errors in the prosecutor's closing arguments materially affect the jury's deliberations and verdict. *United States v. Dixon,* 562 F.2d 1138, 1143 (9th Cir. 1977).

■ Improprieties in counsel's arguments to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge. *United States v. Mikka,* 586 F.2d 152 (9th Cir. 1978). *See, United States v. Parker,* 549 F.2d 1217, 1222 (9th Cir.), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *United States v. Rich,* 580 F.2d 929 (9th Cir. 1978).

 The prosecutor's statement that he couldn't sleep knowing the defendant was loose walking the streets was an improper comment. Counsel's role in closing argument is to deal with the proof objectively and their personal views should not be revealed to the jury. *United States v. DeAlesandro*, 361 F.2d 694 (2nd Cir.), *cert. denied*, 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966); *United States v. Wayman*, 510 F.2d 1020, 1028 (5th Cir. 1975), *cert. denied sub nom. Moore v. United States*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1976). But the comment did not rise to the inflammatory level that can be said to have denied the defendant a fundamentally fair trial. It is unlikely that the statement more probably than not materially affected the jury's deliberations. The trial court exercised care in instructing the jury that, "Statements of counsel are not to be regarded by you as evidence and you will disregard any such statements which are not supported by the evidence received upon this trial." In *United States v. Rich*, 580 F.2d 929, the Court found a similar instruction to have neutralized any harm resulting from the prosecutor's expression of his personal opinion in closing argument.

 The second statement which the petitioner presents as prejudicial error is one implying that it wasn't the police who were lying in this case. In a case where the prosecutor's statement was somewhat more serious than in this case—that if the jury believed appellant's testimony, then they must conclude the police officers were 'out-and-out liars'—the District of Columbia Circuit Court did not find plain error and held that the statement was not so prejudicial as to require reversal. *United States v. Stevenson*, 138 U.S.App.D.C. 10, 12, 424 F.2d 923, 925 (1970). In this case as well, the statement, while an example of an overreaching by the prosecutor in his argument, was not the kind of statement that would make the trial fundamentally unfair in violation of the petitioner's Fourteenth Amendment due process rights, and probably did not affect the jury's deliberations and verdict.

On the basis of the foregoing,

IT IS ORDERED that the petition for a writ of habeas corpus be, and the same hereby is, denied.