Gary L. QUIGG, Petitioner-Appellant,

v.

Roger W. CRIST, Warden of the
Montana State Prison,
Respondent-Appellee.

No. 79–2506.

United States Court of Appeals,
Ninth Circuit.

April 7, 1980.

Rehearing Denied June 23, 1980.

Gary E. Wilcox, Billings, Mont., for petitioner-appellant.

Allen B. Chronister, Helena, Mont., for respondent-appellee.

Before KENNEDY and ANDERSON, Circuit Judges, and von der HEYDT,* Chief District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Quigg appeals the denial of his petition for writ of habeas corpus. This court has jurisdiction pursuant to 28 U.S.C. § 2253. We affirm.

## I. BACKGROUND

Petitioner Gary Quigg was convicted by a Montana state court of the first-degree murder of Billings businessman Lee Robbins in April 1969. Robbins was shot and killed on the night of April 8, 1968, in an unpopulated area near the Billings airport in what apparently began as an armed robbery. Officers found no physical evidence at the scene. The car which Robbins had been driving was found early the next morning in a downtown Billings parking lot.

The rather strong facts pointing circumstantially to the guilt of Quigg are set forth exhaustively in the opinion of the Montana Supreme Court, infra. We summarize only the salient features. Robbins died from two gunshot wounds to the head which were inflicted by .22 caliber bullets. A .22 caliber pistol which Robbins had kept in his car was missing after the robbery. Quigg was first suspected of involvement in Au-gust 1968, when bullets which had killed a guard dog in an unrelated burglary of a bar were compared with the bullets which had killed Robbins. Investigators determined that the same gun which had been used in the Robbins homicide had been used in the bar robbery. The gun used in the bar robbery was eventually traced to Quigg.

Quigg's first trial in January 1969, resulted in a hung jury. Upon retrial in April 1969, Quigg was convicted of first-degree murder and sentenced to life imprisonment. The prosecution relied upon a chain of circumstantial evidence in pursuing Quigg's conviction. It apparently was Quigg's custom to go to the Billings airport on certain evenings at around 10:00 p. m. to pick up a friend who worked there. Robbins' body was discovered at 10:50 p. m. on the evening of the murder. Other evidence established that Quigg was in possession of a number of pills shortly after the robbery which conceivably could have been taken from Robbins, a legitimate drug salesman, and that Quigg also was in possession of a large amount of cash at about the same time. Quigg's possession of the murder weapon was also stressed.

Quigg offered an explanation at trial for possession of the pistol. Quigg testified that he had discovered the gun in a paper sack in a parking lot after observing two men who might have been Indians put the sack down after arguing. Though Quigg could not remember the exact date when he discovered the gun, his testimony indicated that he might have found the pistol the same week that Robbins was murdered. Quigg also emphasized at trial the lack of any leg cast fragments, either at the scene of the murder or in Robbins' car. Quigg was wearing a full leg cast at the time of the murder.

After his conviction, Quigg prosecuted an unsuccessful appeal to the Montana Supreme Court (*State v. Quigg*, 155 Mont. 119, 467 P.2d 692 (1970)), and later failed in an attempt to obtain state post-conviction re-

---

* The Honorable James A. von der Heydt, Chief United States District Judge for the District of Alaska, sitting by designation.

lief. *In re Quigg*, 168 Mont. 512, 544 P.2d 441 (1976). Quigg's petition for federal habeas corpus relief, and its denial, followed. *Quigg v. Crist*, 466 F.Supp. 544 (D.Mont. 1978).

## II. *ISSUES ON APPEAL*

Quigg raises three issues on appeal from denial of his federal habeas corpus petition:

(1) Whether the prosecution's inquiry during his state trial into his failure to give an exculpatory story to police officers now justifies granting habeas corpus relief;

(2) Whether the giving of an aiding and abetting instruction at the state trial was unconstitutionally prejudicial;

(3) Whether the state court's refusal to reopen the trial on the basis of newly-discovered evidence justifies federal habeas corpus relief.

## III. *STANDARD OF REVIEW*

The district court below held an evidentiary hearing to evaluate Quigg's claim for relief. Its findings may not be overturned unless we find them to be "clearly erroneous." *Greenfield v. Gunn*, 556 F.2d 935 (9th Cir.), *cert. denied*, 434 U.S. 928, 98 S.Ct. 413, 54 L.Ed.2d 288 (1977).

## IV. *SILENCE AS TO ALIBI*

■ In a criminal prosecution, it is an error of constitutional proportions to admit evidence that a defendant chose to exercise the right to remain silent after arrest. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In this circuit, evidence of a defendant's silence may not be admitted regardless of whether the defendant first received *Miranda* warnings. *Bradford v. Stone*, 594 F.2d 1294 (9th Cir. 1979).

■ During its cross-examination of Quigg at the second trial, the prosecution probed Quigg's story of discovering the .22 caliber pistol in a sack. Quigg was first asked whether he had told various acquaintances of finding the gun in the sack, and Quigg responded that he had not. The prosecutor then posed the following question:

"Q. And you didn't tell the police when you were arrested about seeing these Indians put the sack in the lot?

"A. No, I didn't."

(Trial Tr. 638, C.R. 66).[1]

Quigg's counsel did not object to the question. There was no direct evidence presented below whether the prosecution mentioned Quigg's response during closing argument.[2] After hearing brief and inconclusive evidence on the issue, the court found that the prosecution had not commented to the jury on Quigg's failure to relate his explanation of how he came to possess the gun to the police. The court further held that the question was harmless error beyond a reasonable doubt.[3] We agree.

In *Anderson v. Nelson*, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968), the Supreme Court held that a prosecutor's comment on a defendant's failure to testify could not be labeled harmless error where "such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal." 390 U.S. at 524, 88 S.Ct. at 1134. This circuit has adopted by analogy the standard enunciated in *Anderson* as the test for determining whether a *Doyle* violation can be judged "harmless." *See Scarborough v. State of Arizona*, 531 F.2d 959 (9th Cir. 1976); *see also United States v. Lopez*, 575 F.2d 681 (9th Cir. 1978).

---

1. Portions of the transcript of Quigg's state trial were transmitted to this court as part of the clerk's record on appeal. Citation is made both to the trial transcript and to the page designation in the clerk's record.

2. Closing arguments apparently were not transcribed.

3. We find it unnecessary to consider the retroactive effect of *Doyle* in this case. The equivalent of the *Doyle* rule has prevailed in this circuit since *Fowle v. United States*, 410 F.2d 48 (9th Cir. 1969). *See also Bradford v. Stone, supra*, at 1296.

██ The finding of the court below that Quigg's response was not stressed to the jury as a basis for conviction was not clearly erroneous. Accordingly, we find that under the *Anderson* standards, the single question on Quigg's post-arrest silence was, by itself, harmless. Defense counsel neither objected nor requested a curative instruction,[4] and evidence of Quigg's guilt was substantial. The court did not err in refusing to grant habeas corpus relief on this issue.

## V. AIDING AND ABETTING INSTRUCTION

██ At Quigg's second trial, the court gave a jury instruction on aiding and abetting. No one other than Quigg was charged with the murder of Lee Robbins. Quigg objects to the giving of the instruction on two grounds. He argues first that the court failed to define properly the terms "aiding" and "abetting." His second point is that evidence of the participation of others in the Robbins murder was so lacking that the giving of the instruction amounted to a violation of due process.[5]

██ We dispose of Quigg's first contention quickly. An allegedly erroneous jury instruction will support a collateral attack on a judgment of conviction only where the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). *See also Henderson v. Kibbe*, 431

U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Bustamante v. Cardwell*, 497 F.2d 556 (9th Cir. 1974); *Shepherd v. Nelson*, 432 F.2d 1045 (9th Cir. 1970). Cases cited by Quigg in his brief deal with the giving of the aiding and abetting instruction in federal court, and are inapposite here. The instruction, as worded, can hardly be said to have infected the entire trial.[6]

██ With regard to Quigg's second contention, that the instruction should not have been given at all, our decision in *Carothers v. Rhay*, 594 F.2d 225 (9th Cir. 1979), supplies the necessary standard. Under *Carothers*, the giving of an aiding and abetting instruction does not violate due process where the state has abolished the distinction between principals and accessories, and where there is evidence before the jury to support the instruction. 594 F.2d at 229. Under Montana law, an aider and abettor is punishable as a principal. See R.C.M. § 94–204 (1949). The issue here is whether evidence in the record supported the giving of the aiding and abetting charge.

Clearly, the state's predominant theory at the second trial was that Quigg, acting alone, had robbed and murdered Robbins, and then driven Robbins' car back into downtown Billings, where he abandoned it in a parking lot. No other individual was named as a potential accomplice or principal. On the other hand, evidence was presented to the jury which at least raised an inference that others participated in the crime.

4. We decline to apply the contemporaneous objection rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Montana's contemporaneous objection procedure at the time of Quigg's trial allowed for errors of constitutional dimension to be raised on appeal even though they were not brought to the attention of the trial court. R.C.M. § 95–2425 (1967).

5. Quigg has also asked that the writ issue on the basis of some apparent confusion among the members of the Montana Supreme Court when the issue of the aiding and abetting instruction was presented on appeal. As a result of that confusion, Quigg contends that the question was never considered by the Court, and that we should reverse for that reason alone. Quigg, however, cites no authority for

the proposition that such failure constitutes grounds for federal habeas corpus relief. We have found none, and see no persuasive reason to extend relief on such a ground in this case.

6. Court's Instruction No. 27 read:
"You are instructed that all persons concerned in the commission of a crime, and whether they directly commit the act constituting the offense, or aided and abetted in its commission, are principals in any crime so committed. However, there is no inference whatsoever intended by the court as to the guilt or innocence of the Defendant by the giving of this instruction, for that is solely and exclusively the duty of the jury to so decide."

According to the testimony of a witness who spoke with Robbins at the airport shortly before his death, Robbins reported that he had been followed to the airport by a couple of men with whom he had nearly had an accident. A motel clerk with whom Robbins had spoken before going to the airport said that Robbins had been concerned because he had almost been run into by a car driven by "two drunken Indians," and they might "come after him." Other testimony established that a fingerprint had been lifted from Robbins' car which could not be matched with those of either Robbins or Quigg, and that Quigg was overheard talking with a friend shortly after the murder about "getting rid of something."

While the evidence of accomplice participation was far from overwhelming, the evidentiary foundation for the challenged instruction was not so thin as to amount to a due process violation. In view of the record as a whole, habeas corpus relief was not erroneously denied on this issue.

## VI. NEWLY–DISCOVERED EVIDENCE

Quigg's final argument is that he was denied due process when the state trial court refused to reopen the trial for newly-discovered evidence after the jury had begun deliberations. The evidence consisted of prospective testimony from a witness who allegedly saw a man drive Robbins' car into a downtown Billings parking lot on the night of the murder, exit the car before it came to a full stop, and leave the lot hurriedly. The driver did not match the description of Gary Quigg. The testimony of a second witness essentially would have corroborated this story.

▉ The mere existence of newly-discovered evidence does not constitute grounds for federal habeas corpus relief unless the evidence bears upon the constitutionality of the petitioner's detention. *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). *Townsend* established that a federal district court has the obligation to conduct an evidentiary hearing whenever "evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, . . ." *Id.* The court below satisfied that obligation in this case.

In finding that the evidence submitted did not warrant habeas corpus relief, the district judge applied a standard of whether the new evidence would probably produce an acquittal, citing *Shuler v. Wainwright*, 341 F.Supp. 1061 (D.Fla.1972), *reversed in part and vacated and remanded in part*, 491 F.2d 1213 (5th Cir. 1974). The "probability of acquittal" standard appears to be endorsed by the weight of authority. *See, e. g., Mastrian v. McManus*, 554 F.2d 813 (8th Cir.), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977). We have not been cited any authority in our own circuit on the proper standard to apply in habeas corpus cases, though we do apply the probability of acquittal standard in judging motions for new trials based on newly-discovered evidence in our own district courts. *See United States v. Krasny*, 607 F.2d 840 (9th Cir. 1979). Accordingly, we hold that the district court applied the correct standard.

▉ We find that the district court did not err in concluding that the introduction of the proposed evidence would not probably have produced an acquittal. The testimony would not have ruled out Quigg's participation in the murder, but would merely have suggested that Quigg did not drive the car back to Billings, or that Quigg had been dropped off at some other point by the driver before the car was abandoned. Strong circumstantial evidence of Quigg's guilt would have been left uncontradicted, such as his possession of the murder weapon, his opportunity to commit the crime, and his possession of the pills and the cash. We cannot say that the court's evaluation of this testimony was clearly erroneous.

## VII. CONCLUSION

The judgment of the court below is AFFIRMED.