**Michael Ogden HANKISON, Petitioner,**

v.

**The BOARD OF PRISON TERMS,
et al., Respondents.**

**No. CV 90–2338–WDK(E).**

United States District Court,
C.D. California.

June 27, 1991.

Dean J. Miller, Law Offices of George A. Boyle, Bakersfield, Cal., for petitioner.

Juliet H. Swoboda, Deputy Atty. Gen., Los Angeles, Cal., for respondents.

## ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

KELLER, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

IT IS FURTHER ORDERED that the Clerk serve copies of this order, the Magistrate Judge's Report and Recommendation and the Judgment herein by United States mail on Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CHARLES F. EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable William D. Keller, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" on May 8, 1990. Respondents filed an Answer on August 1, 1990. Petitioner filed a Reply on September 6, 1990.

Respondents filed a "Response to this Court's Order of September 7, 1990, For Expansion of the Record" on September 21, 1990. The Court held a status conference on October 10, 1990. Respondents filed a "Supplemental Response" on January 2, 1991. Petitioner filed a "Supplemental Brief" on January 3, 1991. The Court held an evidentiary hearing on January 7, 1991.

### BACKGROUND

Following a jury trial, Petitioner was convicted of committing sex acts upon a child (Petition, ¶ 2; Answer, 3). The victim, Petitioner's daughter Myklyn Hankison ("Myklyn"), was five years old at the time of the offenses, seven years old at the time of trial and twelve years old at the time of the evidentiary hearing (Reporter's Transcript ("R.T.") 62; October 10, 1990 status conference; January 7, 1991 evidentiary hearing).

At trial, Myklyn testified Petitioner touched her in a sexual manner with his fingers, tongue and "hose" (R.T. 31–41, 49–51, 57–58). She said he moved the "hose" in and out of her mouth and then "peed" in her mouth (R.T. 41–42). She testified she swallowed this "pee," which tasted like sour milk (R.T. 54–55). Myklyn testified that a television commercial concerning child molestation prompted her to disclose the offenses (R.T. 52–53).

Certain trial evidence corroborated Myklyn's testimony. Myklyn's aunt testified Myklyn previously had complained that Petitioner had touched Myklyn's private parts (R.T. 118). Myklyn's mother, Penelope Ann Hankison (later Penelope Ann Gilbert) ("Penelope") testified she smelled semen in Myklyn's bed linen during the time of the offenses (R.T. 148–49). Penelope also testified she noticed changes in Myklyn during the time of the offenses (R.T. 166–67). She said Myklyn became withdrawn, stopped playing with other children, began to do less well in school and threatened suicide (R.T. 153, 168–69, 177–78).

After the jury returned a guilty verdict, Penelope informed the prosecutor that Myklyn had recanted her trial testimony during a conversation between Myklyn and Penelope's new boyfriend (Supplemental Clerk's Transcript ("S.C.T.") 4). The prosecutor informed defense counsel and the trial court. *Id.* The court, the prosecutor

and defense counsel then questioned Myklyn. *Id.* at 4–5. The court concluded that the events Myklyn described in her trial testimony actually occurred (R.T. 414). The court therefore declined to upset the jury's verdict. *Id.*

At the January 7, 1991 evidentiary hearing, this Court heard testimony from Penelope, Myklyn, Joseph Payne (the Deputy District Attorney who prosecuted the case prior to trial) and Janet Carroll (the Deputy Sheriff who investigated the case). The Court also received declaration testimony from Howard Swart (the Deputy District Attorney who prosecuted the case at trial), Teresa Armstrong (the "Victim Services Representative"), and Robert Foltz, Jr. (a Deputy District Attorney who was involved with the case at its inception).

Penelope testified that, *prior* to the verdict, she informed Howard Swart and Janet Carroll that Myklyn had recanted her accusations against Petitioner. Penelope testified she was told not to tell anyone about the recantation or she would be put in jail. Myklyn testified her trial testimony was false and Petitioner never sexually molested her.

Janet Carroll testified she never heard anything about a pre-verdict recantation. She denied threatening Penelope with jail. Howard Swart similarly denied any knowledge of a pre-verdict recantation.

## PETITIONER'S CONTENTIONS

After exhausting state remedies, Petitioner challenges his conviction, arguing:

1. The prosecution violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (*"Brady"*) by withholding evidence of Myklyn's pre-verdict recantation; and

2. Myklyn's recantation constitutes "newly discovered evidence" warranting federal habeas relief.

## DISCUSSION

For the reasons discussed herein, the Petition should be denied and dismissed with prejudice.

I. *Neither the Prosecution Nor Law Enforcement Knew of Any Alleged Recantation by Myklyn Until After Petitioner's Trial Concluded. Therefore, No Brady Error Occurred.*

■ "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process ..." *Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1196. However, *Brady* error cannot occur where the prosecution and law enforcement do not possess and are unaware of the favorable evidence. *United States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 824 (9th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985). No *Brady* error occurred in the present case because Myklyn's alleged recantation was unknown to the prosecution and law enforcement until after Petitioner's trial concluded.

Penelope's evidentiary hearing testimony constitutes the only evidence contrary to this factual finding. For the reasons discussed herein, the Court does not find Penelope's testimony credible.

First, Penelope's testimony was uncertain and internally inconsistent. She sometimes expressed uncertainty concerning whether she discussed Myklyn's alleged recantation with Janet Carroll prior to trial. At times, Penelope admitted confusion regarding the person or persons with whom she allegedly spoke regarding the matter. At other times, she purported to express certainty regarding these alleged conversation(s).

Second, Penelope's demeanor did not inspire confidence in the accuracy of her testimony. She exhibited profound emotion and required a recess to collect herself at one juncture. She appeared to be laboring under stresses which may have impaired her ability accurately to recall and recount facts.

Third, the tenor of Penelope's testimony at trial and at Petitioner's initial sentencing hearing suggests Penelope did not then know of any alleged recantation by Myklyn. At trial, Penelope testified she had believed Petitioner when Petitioner denied

prior accusations of molestation, but she did not believe Petitioner when Petitioner denied the accusations giving rise to the charged offenses (R.T. 151). She testified at trial that Myklyn's accusations caused Penelope to cease loving Petitioner (R.T. 153–54). At Petitioner's initial sentencing hearing (before the post-verdict recantation emerged), Penelope stated: "I think what has happened to my daughter has affected her very much.... She doesn't trust people. He's affected her. It's awful. She's just now getting over it. She's in counseling. We both are from what has happened. He's a danger to society" (R.T. 410).[1] It seems unlikely Penelope would have testified in the state court proceedings in the manner she did—with an apparently firm belief in Petitioner's guilt—if she then knew Myklyn had recanted her accusations.[2]

Fourth, the record suggests the prosecution's first notice of Myklyn's alleged recantation occurred after receipt of the verdict. Penelope testified she had only one conversation with Howard Swart regarding Myklyn's alleged recantation. The record establishes Penelope had a conversation with Howard Swart concerning Myklyn's alleged recantation after receipt of the verdict (S.C.T. 4).[3] Penelope testified a conversation between Myklyn and Penelope's new boyfriend first exposed Myklyn's recantation. The record reflects Myklyn's post-verdict recantation arose during a conversation between Myklyn and Penelope's new boyfriend. *Id.* Thus, the record strongly suggests Myklyn's initial recantation, and any conversations between Penelope and the prosecution or law enforcement concerning this recantation, occurred *after* receipt of the verdict.

Fifth, Penelope's testimony is inherently improbable. It seems unlikely enough that a prosecutor or law enforcement official knowingly would violate his or her *Brady* obligations and threaten a witness with jail for disclosing evidence potentially useful to the defense. It seems even more unlikely that, having violated his *Brady* obligations before and during trial, a prosecutor suddenly would disclose to the Court and to defense counsel before sentencing the very evidence he previously suppressed.

Sixth, credible evidence contradicts Penelope's evidentiary hearing testimony. The Court finds the testimony of Janet Carroll and Howard Swart to be credible to the extent such testimony is inconsistent with Penelope's evidentiary hearing testimony.[4]

## II. *Myklyn's Recantation Does Not Warrant Federal Habeas Relief.*

Petitioner contends Myklyn's recantation constitutes "newly discovered evidence" warranting federal habeas relief. This contention is without merit.

Myklyn's recantation is not "newly discovered evidence." A prosecution witness' subsequent recantation does not constitute "newly discovered evidence" because trial cross-examination affords defense counsel the opportunity to discover and reveal the motivation for and the alleged falsity of the witness' trial testimony. *See Davis v. Blackburn*, 789 F.2d 350, 352 (5th Cir.1986); *see also People v. Parrison*, 137 Cal.App.3d 529, 541, 187 Cal.Rptr. 123 (1982). Similarly, the Ninth Circuit has held that, when a potential witness refuses to testify at a criminal trial but later discloses evidence favorable to the defendant, the disclosure does not constitute "newly discovered evidence." *United States v.*

---

1. At the evidentiary hearing, Penelope confirmed she had testified truthfully in the state court proceedings.

2. Joseph Payne testified at the evidentiary hearing that, following trial, Penelope told him she thought Howard Swart had done a very good job in prosecuting Petitioner. This commendation also suggests Penelope did not then know of any alleged recantation or any alleged prosecutorial coercion.

3. As Petitioner conceded at the October 10, 1990 status conference, this Court must accept as accurate the facts set forth in the settled statement contained in the Supplemental Clerk's Transcript. *See* 28 U.S.C. § 2254(d).

4. Myklyn recalled that her first recantation occurred after trial. Her testimony was confused and uncertain, however, and the Court does not rely upon this testimony in reaching the factual finding discussed above.

*Lockett,* 919 F.2d 585, 591–92 (9th Cir. 1990).[5]

■ Even if this Court were to regard Myklyn's recantation as "newly discovered evidence," the recantation would not furnish a basis for federal habeas relief. In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the United States Supreme Court stated:

> "Of course, [newly discovered] evidence must bear upon the constitutionality of the [habeas] applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Id.* at 317, 83 S.Ct. at 759.

Several circuit courts have followed this directive in summarily denying habeas petitions predicated on evidence relevant merely to the guilt of a state prisoner. *See Boyd v. Puckett,* 905 F.2d 895, 896–97 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 526, 112 L.Ed.2d 537 (1990); *Stockton v. Virginia,* 852 F.2d 740, 749 (4th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989) ("a habeas petitioner must show that the prosecutor or other government officer knew the testimony in question was false in order to prevail") (citations and quotations omitted); *De Martino v. Weidenburner,* 616 F.2d 708, 711 (3rd Cir.1980); *Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir.1977) (recantation of prosecution witness); *Burks v. Egeler,* 512 F.2d 221, 229–30 (6th Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 297, 46 L.Ed.2d 270 (1975) (perjury by trial witnesses does not merit habeas relief absent a showing of prosecutorial involvement in the perjury).[6]

In the context of a motion under 28 U.S.C. section 2255, the Ninth Circuit has held that the existence of perjurious trial testimony will not merit collateral relief unless "the prosecuting officials knew at the time such testimony was used that it was perjured." *Marcella v. United States,* 344 F.2d 876, 880 (9th Cir.1965), *cert. denied,* 382 U.S. 1016, 86 S.Ct. 630, 15 L.Ed.2d 531 (1966). However, in *dicta,* the Ninth Circuit has stated: "Newly discovered evidence warrants federal habeas relief if it would 'probably produce an acquittal.'" *Harris v. Vasquez,* 913 F.2d 606, 626 (9th Cir.1990), *citing Quigg v. Crist,* 616 F.2d 1107, 1112 (9th Cir.), *cert. denied,* 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980) (*dicta*); *accord Gordon v. Duran,* 895 F.2d 610, 614–15 (9th Cir.1990) (*dicta*). The Ninth Circuit first stated this dictum in *Quigg v. Crist, supra.* The *Quigg* Court relied upon the Eighth Circuit's decision in *Mastrian v. McManus,* 554 F.2d 813, 822 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977). Yet, the *Mastrian* Court stated: "Although the claim of newly discovered evidence relevant to the guilt of a state prisoner is generally *not* a ground for relief on federal habeas corpus [*citing, inter alia, Townsend v. Sain, supra* ] in the interests of judicial economy we believe it prudent to address the contention here." *Id.* (emphasis added). Consequently, it appears uncertain whether courts within the Ninth Circuit may grant habeas relief based on newly discovered evidence relevant solely to the guilt of a state prisoner. *Ibid.*[7]

In any event, this Court does not view Myklyn's recantation as reliable. "The recanting of prior testimony by a witness is ordinarily met with extreme skepticism." *United States v. Nixon,* 881 F.2d 1305, 1311 (5th Cir.1989); *see In re Weber,* 11 Cal.3d 703, 114 Cal.Rptr. 429, 442, 523 P.2d 229, 242 (1974); *People v. McGaughran,* 197 Cal.App.2d 6, 17 Cal.Rptr. 121, 127–28 (1961) (involving recantation of fourteen year old victim of attempted statutory

---

5. Petitioner also contends law enforcement officials and the prosecution employed "improper" "techniques" and "systematic pressure," warranting habeas relief (Petition, ¶ 10(b)). The Court finds Petitioner has failed to prove any such technique or pressure was employed.

6. Petitioner has cited no case in which any federal court has granted habeas relief to a state prisoner on the basis of a witness' subsequent recantation.

7. Such relief appears to be available in the Second Circuit, provided the new evidence is credible. *See Sanders v. Sullivan,* 863 F.2d 218, 226–27 (2d Cir.1988).

rape); *Iowa v. Tharp,* 372 N.W.2d 280, 282 (Iowa App.1985) (involving recantation of fifteen year old stepdaughter/victim of sexual abuse); *People v. Andrews,* 360 Mich. 572, 104 N.W.2d 199, 201 (1960) (involving assertion by defendant's eleven year old daughter that she previously testified falsely because, *inter alia,* her father abused her mother). In light of the corroboration of Myklyn's trial testimony and the trial judge's evaluation of Myklyn's prior recantation, this Court does not view her present recantation as credible. *See Davis v. Blackburn,* 789 F.2d 350, 352 (5th Cir. 1986) (stressing importance of trial judge's evaluation of recanting witness' testimony); *see also United States v. Brown,* 417 F.Supp. 340 (E.D.Pa.1976).[8]

This Court also cannot ignore the probable existence of pressures upon Myklyn to help the father she still professes to love. *See Iowa v. Tharp,* 372 N.W.2d 280, 282 (Iowa App.1985) ("In cases of this type, where families are torn apart, there is great pressure on the child to 'make things right' "); *Commonwealth v. Thompson,* 271 Pa.Super. 170, 412 A.2d 630 (1979) (court refused to overturn conviction of defendant for raping eleven year old stepdaughter who later recanted her trial testimony).[9]

### RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying and dismissing the Petition with prejudice.

DATED: January 29, 1991

NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

---

**8.** During the evidentiary hearing, Myklyn gave conflicting explanations for her trial testimony. At one point, she said she had lied at trial in a calculated attempt to make Petitioner "go away." Later, she said she had lied because, at the time of trial, she "didn't know what the truth was." Neither explanation is convincing.

**9.** Contrary to Petitioner's representations, Petitioner had ample opportunity to influence directly Myklyn's recantation. Petitioner's Reply brief represents Petitioner had no contact with Myklyn while Petitioner was in prison (Petitioner's Reply at 5). At the evidentiary hearing, Myklyn admitted she visited Petitioner in prison on a weekly or bi-weekly basis.