**Willie GORDON, Petitioner–Appellant,**

**v.**

**Robert DURAN, Respondent–Appellee.**

**No. 88–6046.**

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 4, 1989 *.

Decided Feb. 5, 1990.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Willie Gordon, Jamestown, Cal., pro se.

Roy C. Preminger, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before NORRIS, THOMPSON and O'SCANNLAIN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Willie Gordon appeals *pro se* the district court's decision denying his petition for a writ of habeas corpus. We affirm.

## FACTS

From June 4 through June 8, 1982, police officers observed Gordon and four others engaged in what appeared to be a check fraud scheme. The suspects operated out of an apartment and a motel room which were rented under an assumed name. They forged checks at local banks, wearing wigs and using other persons' identification.

Police arrested the suspects and, pursuant to search warrants, searched the apartment and motel room. They found a typewriter, wigs, checks on other persons' accounts, and financial information regarding several other people. All five suspects were charged with various forgery and conspiracy counts.

After a jury trial, Gordon was found guilty of conspiracy to commit forgery, forgery, possession of blank checks with intent to defraud, and possession of completed checks with intent to defraud. Gordon was sentenced to five years in prison. The California Court of Appeal affirmed Gordon's conviction. Gordon exhausted his state remedies, and then filed a petition for a writ of habeas corpus in the district court.

Before reaching Gordon's claims on appeal, we note that, although he was released on parole on March 3, 1989, his appeal is not moot. Parole constitutes "custody" for habeas corpus purposes. *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963). Further, Gordon was released after he filed an amended petition for habeas corpus in the district court, and, "under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968).

## DISCUSSION

### A. *The Government's Failure to Respond*

■ Gordon first contends that the respondent-appellee, the California Attorney General's Office ("respondent"), failed to respond to five of eight claims Gordon raised in his habeas petition after the district court issued to the respondent an order to show cause. The gist of Gordon's argument is that the respondent's failure to respond to all of his claims entitles him to a default judgment.

The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment. *See Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984); *Broussard v. Lippman,* 643 F.2d 1131, 1134 (5th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981); *Goodman v. Keohane,* 663 F.2d 1044, 1047 n. 4 (11th Cir.

1981); *Allen v. Perini,* 424 F.2d 134, 138 (6th Cir.), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970); *cf. Ruiz v. Cady,* 660 F.2d 337, 341 (7th Cir.1981) (within district court's discretion to enter default judgment for petitioner if government's failure to respond creates excessive delay in the proceedings). Here, the magistrate simply resolved the five claims against Gordon without need of any response from the respondent.

### B. *Insufficient Evidence*

■ Gordon also claims that evidence admitted at his trial was insufficient to sustain his conspiracy conviction. In evaluating this claim, we view the record as a whole in the light most favorable to the prosecution. *United States v. Adler,* 879 F.2d 491, 495 (9th Cir.1988). We determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

Under California law, to prove the elements of a conspiracy, the state must show an overt act intended to effect the object of the conspiracy, not just a mere agreement with an unlawful object in view. *See People v. Nasworthy,* 94 Cal.App.2d 85, 88, 210 P.2d 83, 86 (1949); *see also* Cal.Penal Code §§ 184 (West 1988), 1104 (West 1985).

Gordon was observed by police surveillance. He was seen performing acts with his codefendants that could be interpreted as overt acts furthering the check fraud scheme. Gordon was found and arrested alone in the apartment where some of the forgery materials were found. Expert evidence detailing how forgery schemes operate was presented at Gordon's trial and supported the state's contention that Gordon was the leader of the group in the forgery scheme. Viewing these facts in the light most favorable to the prosecution, we conclude that a rational jury could have found Gordon guilty of conspiracy beyond a reasonable doubt.

## C. *Prior Misconduct Evidence*

Gordon contends the state trial court committed error of federal constitutional dimension when it received evidence of his alleged participation with his codefendants in an earlier check forgery scheme.

█ A habeas petitioner who challenges a state court's admission into evidence of prior acts of misconduct is not entitled to habeas corpus relief unless the state court's admission of this evidence violated the petitioner's federal due process right to a fair trial under the Constitution. *See Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Middleton v. Cupp,* 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986); *Butcher v. Marquez,* 758 F.2d 373, 378 (9th Cir.1985).

█ In *Butcher,* we found the admission of evidence of uncharged crimes did not deprive the defendant of federal due process. *Butcher,* 758 F.2d at 378. Supporting this conclusion were the trial judge's limiting instructions to the jury that the jury could use the evidence of uncharged crimes only as evidence of intent, the jury's ability to weigh the witness's credibility, and the relevance of the evidence to the defendant's intent. *Id.*

Similar facts are present here. Gordon's trial jury was instructed that they could not consider the evidence of Gordon's alleged involvement in the prior conspiracy to commit forgery to prove that he was a person of bad character, or that he had a disposition to commit crimes. They were instructed they could only consider this evidence for the limited purpose of determining if it tended to show (1) the existence of the intent that was a necessary element of the crimes charged; (2) the identity of Gordon as the person who committed the crimes; (3) that Gordon had knowledge or possessed the means which might have been useful or necessary for the commission of the crimes; and (4) the existence of a conspiracy.

Gordon's jury also had an opportunity to observe and weigh the credibility of the police officer who testified concerning the alleged acts of prior misconduct. Moreover, Gordon's counsel argued that the police officer was biased against Gordon, thus giving the jury the benefit of defense counsel's views as the jury weighed the officer's credibility. Finally, the evidence of Gordon's alleged prior misconduct was relevant to the question whether Gordon joined the charged conspiracy.

We conclude that, as in *Butcher,* Gordon's federal due process right to a fair trial was not violated by the admission of evidence of the alleged prior acts of misconduct.

## D. *Speedy Trial*

█ Gordon also contends that his right to a speedy trial was violated when 213 days elapsed between the date his first trial ended in a mistrial and the date his second trial began. This delay was caused by ten continuances, all of which were requested by Gordon's counsel and granted with Gordon's consent. Under these circumstances, Gordon cannot claim a violation of his right to a speedy trial.

## E. *Search and Seizure*

█ Gordon also contends that evidence found in the apartment where he was arrested should have been suppressed under the fourth amendment, because the warrant for the search of the apartment was based on a police officer's false statements. The magistrate determined that Gordon litigated this issue in state court, though Gordon seems to dispute this.

Whether or not Gordon did in fact litigate this fourth amendment claim in state court, he did have the opportunity to do so. Under California law, a defendant can move to suppress evidence on the basis that it was obtained in violation of the fourth amendment. *See* Cal.Penal Code § 1538.5 (West 1982 & Supp.1989). Given that Gordon had an opportunity in state court for "full and fair litigation" of his fourth amendment claim, the Constitution does not require that Gordon be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his

trial. *See Stone v. Powell*, 428 U.S. 465, 481–82, 96 S.Ct. 3037, 3046–47, 49 L.Ed.2d 1067 (1976).

### F. *Ineffective Assistance of Counsel*

■ Gordon contends that his attorney's failure to argue his speedy trial and illegal search and seizure claims on appeal in his state court proceedings denied him effective assistance of appellate counsel in violation of the sixth amendment. To succeed on this claim, Gordon must show that his attorney's performance was deficient and that this deficiency prejudiced his case. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). As the Supreme Court stated in *Strickland*, "a court must indulge a strong presumption that [Gordon's state appellate counsel's] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

Applying the *Strickland* test to Gordon's attorney's failure to argue Gordon's speedy trial claim on appeal, Gordon's attorney could reasonably have determined that the claim had no merit, given that the delays were due to continuances granted at the request of defense counsel and with Gordon's consent.

■ Gordon's appellate counsel also failed to argue Gordon's illegal search and seizure claim. Gordon wanted to challenge the search of his codefendant's apartment, where Gordon was found and arrested. To have standing to challenge the search, Gordon would have to establish that he had a legitimate expectation of privacy in the apartment. *See Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967).

Gordon's use of the apartment bears some resemblance to the defendant's use of another's apartment in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In *Jones*, the Supreme Court concluded that the defendant, who used a friend's apartment while the friend was away, had a key to the apartment, kept some clothes there, and slept there "maybe a night," could challenge a search of that apartment. *Id.* at 259, 265, 80 S.Ct.

at 733. As the Court later reasoned, *Jones* stands for "the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Rakas v. Illinois*, 439 U.S. 128, 142, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978).

It is unclear from the record whether Gordon had a key to the apartment where he was arrested. Gordon was not using the apartment while his codefendant who rented it was away. Gordon states in his opening brief, which he signed, that the apartment was not his, and the only things in it that belonged to him were his wallet, driver's license and keys to his car and house. These are items a person typically carries with him. And, as previously stated, Gordon was in the apartment when he was arrested.

Gordon's attorney may have reasonably concluded that Gordon's use of the apartment was not sufficiently similar to the use of the friend's apartment by the defendant in *Jones* and that Gordon could not establish a legitimate privacy interest in the apartment. We conclude that the failure of Gordon's attorney to argue the illegal search issue on appeal does not render his performance "deficient" under *Strickland*.

### G. *Newly Discovered Evidence*

■ Gordon claims that two "newly found" codefendants can testify that Gordon had no knowledge of the conspiracy. However, the district court noted that one of the two "new" witnesses testified at Gordon's trial and provided essentially the same exculpatory material. Further, the other "new" witness pleaded guilty prior to Gordon's first trial, and Gordon gives no reason for not calling her to testify.

Even if we assume that Gordon's "new" evidence was truly "newly discovered," the mere existence of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for federal habeas relief. *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963);

see *Armstead v. Maggio,* 720 F.2d 894, 896–97 (5th Cir.1983) (affidavit of another confessing to the crime). More is needed. It must be shown that the newly discovered evidence would probably have resulted in the defendant's acquittal. *Quigg v. Crist,* 616 F.2d 1107, 1112 (9th Cir.), *cert. denied,* 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980). Gordon has made no showing that had the claimed newly discovered evidence been presented at his trial, he probably would have been acquitted.

**H. *Exclusion of Blacks from the Jury***

 Gordon, a Black man, claims that Blacks were excluded from his jury pool and from his jury. He argues that his jury did not represent a fair cross-section of the community as guaranteed by the sixth and fourteenth amendments. *See Taylor v. Louisiana,* 419 U.S. 522, 528–31, 95 S.Ct. 692, 696–68, 42 L.Ed.2d 690 (1975).

To challenge successfully the makeup of his jury, Gordon "must prove that his race has been systematically excluded." *Apodaca v. Oregon,* 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972); *see also Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). The statistics Gordon cites do not disclose any underrepresentation of Blacks in the jury pool in the community where he was tried. Further, unlike the defendant in *Taylor* who showed that women were systematically excluded from the jury pool by a discriminatory state statute, *see* 419 U.S. at 523–25, 95 S.Ct. at 694–95, Gordon makes no showing that Blacks were systematically excluded from his jury pool.

Gordon argues that Blacks were excluded from his trial jury. He contends that one Black was in the pool from which his trial jury was selected, but no Blacks were on his jury. However, "a defendant may not ... challenge the makeup of a jury merely because no members of his race are on the jury." *Apodaca,* 406 U.S. at 413, 92 S.Ct. at 1634. Gordon does not make any showing that Blacks were systematically

excluded from his trial jury. *See Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1722–23, 90 L.Ed.2d 69 (1986).

We conclude that Gordon's exclusion claim has no merit. Accordingly, his contention that his trial counsel was ineffective in not moving to quash the jury on this ground has no merit.

AFFIRMED.