**Philip K. SADOWSKI, Petitioner,**

v.

**Jack McCORMICK, Warden, Montana State Prison, Respondent.**

No. CV–91–023–BU.

United States District Court,
D. Montana,
Butte Division.

March 6, 1992.

Philip K. Sadowski, pro se.

Marc Racicot, Joseph E. Thaggard, Asst. Atty. Gen., Helena, Mont., for respondent.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

### BACKGROUND

Philip K. Sadowski, was convicted of the criminal offense of deliberate homicide in violation of Mont.Code Ann. § 45–5–102, following a trial by jury in the District Court for the Eighteenth Judicial District, Gallatin County, Montana. Sadowski was sentenced to a term of imprisonment of 40 years. Sadowski's conviction and sentence were affirmed upon appeal. *State v. Sadowski*, 247 Mont. 63, 805 P.2d 537 Mont. (1991).[1]

Sadowski seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The bases of Sadowski's challenge to the validity of his conviction are the same as those presented upon his direct appeal to the Montana Supreme Court. Sadowski claims that the alleged errors operated to effectively deny him a fair trial in violation of the Due Process Clause of the fourteenth amendment to the United States Constitution.

Sadowski's petition was initially referred to the United States Magistrate Judge for the District of Montana, the Honorable Robert M. Holter, pursuant to 28 U.S.C. § 636(b)(1)(B), (C), and Rule 400–1 of the RULES OF PROCEDURE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA, for preliminary consideration in accordance with Rule 4, RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS. The Magistrate Judge has duly filed his report with the court recommending the petition be summarily dismissed. In accordance with the prescription of 28 U.S.C. § 636(b), Sadowski has timely filed his objections to the Magistrate Judge's report.

Having conducted a *de novo* review of the record, as it pertains to the objections advanced by Sadowski, the court enters the present memorandum, addressing the merits of the objections presented by Sadowski.

---

1. On direct appeal Sadowski raised three claims of error: (1) improper admission of other crimes evidence; (2) improper prosecutorial comment upon defendant's post-arrest silence; and (3) failure of the state to collect potentially exculpatory evidence. 805 P.2d at 537.

The facts surrounding the homicide of which Sadowski was convicted are set forth in detail in *State v. Sadowski, supra.* The underlying facts pertinent to the resolution of Sadowski's petition for habeas relief may be succinctly stated. On April 14, 1989, Sadowski and his cousin, Sid Warburton, made the acquaintance of two individuals, Frank McKinnis and Lynn Bell, at a local tavern in Gallatin County, Montana. After the tavern closed, the four referenced individuals made their way to Sadowski's home where they were met by Robert Hare, a friend of Bell's, and an individual whom Sadowski had never met. The group continued drinking in a woodworking shop located adjacent to Sadowski's home. At a point in time when Sadowski, McKinnis and Hare were the only three individuals in the woodworking shop, Sadowski shot and killed Hare with a handgun. Sadowski asserted as his sole defense that he was justified in shooting Hare because Hare was attacking him. 805 P.2d at 540.

## OTHER CRIMES EVIDENCE

■ As a general proposition, states are afforded wide latitude in developing their own rules of evidence. *Chambers v. Mississippi*, 410 U.S. 284, 302–03, 93 S.Ct. 1038, 1049–50, 35 L.Ed.2d 297 (1973). Consequently, questions relating to the admissibility of evidence are viewed as matters of state law, and generally do not give rise to constitutional errors which are subject to redress in a federal habeas corpus proceeding. *See, Butcher v. Marquez*, 758 F.2d 373 (9th Cir.1985). Federal habeas corpus relief is not considered the proper remedy to correct trial errors or irregularities absent a denial of due process. *Id. See also, Jackson v. California*, 336 F.2d 521 (9th Cir.1964); *accord, Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). To establish a denial of due process predicated upon evidentiary error, the petitioner must prove that the error so fatally infected the trial as to deprive the petitioner of the fundamental fairness mandated by due process. *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). In *Dowling*, the Supreme Court observed:

Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly. As we observed in *[United States v.] Lovasco* [431 U.S. 783] at 790 [97 S.Ct. 2044 at 2048, 52 L.Ed.2d 752 (1977)]:

'Judges are not free, in defining 'due process' to impose on law enforcement officials [their] 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' *Rochin v. California*, 342 U.S. 165, 170 [72 S.Ct. 205, 208, 96 L.Ed. 183] (1952).... [They] are to determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' *Mooney v. Holohan*, 294 U.S. 103, 112 [55 S.Ct. 340, 342, 79 L.Ed. 791] (1935), and which define 'the community sense of fair play and decency,' *Rochin v. California, supra*, [342 U.S.], at 173 [72 S.Ct. at 210].'

493 U.S. at 352–53, 110 S.Ct. at 674–75.

*Dowling* is of particular relevance to the present case since the Court addressed the issue of whether the introduction of other crimes, wrongs or acts of the defendant was so prejudicial under the circumstances presented, that it operated to deprive the defendant of due process of law by rendering his trial fundamentally unfair. 493 U.S. at 352–53, 110 S.Ct. at 674–75. The Court in *Dowling* ultimately concluded the admission of evidence of other misconduct by the defendant did not merit condemnation under a due process analysis, especially in view of certain limiting instructions given by the trial court. 493 U.S. at 353, 110 S.Ct. at 674. Even prior to *Dowling*, the court of appeals for this circuit has consistently employed an identical analysis in evaluating whether the admission of evidence of alleged prior acts of misconduct violated a criminal defendant's federal due process right to a fair trial. *See, Butcher v. Marquez, supra; Gordon v. Duran*, 895 F.2d 610 (9th Cir.1990).

■ Although the determination of whether the admission of prior misconduct evidence was so prejudicial as to render a trial fundamentally unfair must be determined on a case by case basis, *see, Butcher*, 758 F.2d at 378, the following factors are generally considered in determining whether the admission of the disputed evidence rendered the trial fundamentally unfair: (1) whether the evidence was relevant to a factual issue presented for determination; (2) whether the jury is presented with an opportunity to observe and weigh the credibility of percipient witnesses to the prior incident; (3) whether the defendant was afforded an adequate opportunity to refute the disputed evidence; and (4) whether proper limiting instructions were provided by the trial judge precluding the jury from considering evidence of character as establishing guilt. *See, Dowling*, 493 U.S. at 353, 110 S.Ct. at 674; *Gordon*, 895 F.2d at 613; *Butcher*, 758 F.2d at 378.

■ In addressing the relevancy of a particular item of disputed evidence, a habeas court must determine whether the evidence was probative of a consequential fact. In sanctioning the admission of the evidence of Sadowski's prior misconduct, the Montana Supreme Court identified the consequential fact as being the reasonableness of Sadowski's claim of self-defense, since the prior incident and the shooting of Hare occurred under similar circumstances. *Sadowski*, 805 P.2d at 553.[2] This court agrees with the Montana Supreme Court that the evidence of Sadowski's prior use of a weapon was relevant to the issue of self-defense. Sadowski testified that he retrieved the gun from his house because he was concerned that McKinnis, Bell and Hare intended to commit a robbery or some other transgression. Sadowski further testified that he first drew the gun when Hare advanced towards him in a threatening manner, firing the gun only in self-defense.

Through this testimony, Sadowski placed in issue the purpose of his having and using the gun. Consequently, evidence pertaining to his previous use of a weapon for the purpose of threatening or attacking another individual was legitimately admitted to rebut Sadowski's claimed purpose. *See, e.g., United States v. Fountain*, 768 F.2d 790, 796 (7th Cir.1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986) (other crimes evidence admitted to rebut defense of self-defense); *accord, United States v. Hunter*, 672 F.2d 815 (10th Cir.1982) (other crimes evidence properly admitted to rebut defense of duress).

The percipient witness to Sadowski's prior misconduct testified before the jury and was subjected to cross-examination by Sadowski. The jury was free to weigh the witness' credibility and the significance of the testimony to the issue of self-defense. *Dowling*, 493 U.S. at 353, 110 S.Ct. at 674; *Gordon*, 895 F.2d at 613. Considering the circumstances of the case, Sadowski has failed to convince the court that the admission of the evidence concerning his prior misconduct, even if the court were to assume the admission was erroneous, rendered his trial so fundamentally unfair as to violate his due process right to a fair trial.

POST–ARREST SILENCE

■ When a defendant has maintained silence after receiving *Miranda* warnings, the constraints of due process do not permit the prosecutor to use his silence to impeach an exculpatory story told for the first time at trial. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements." *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). The court of appeals for this circuit has stated:

---

**2.** The trial judge gave the jury a limiting instruction regarding the evidence of Sadowski's prior misconduct. However, the judge merely cited the generally recognized list of permissible uses of the "other crimes evidence", *i.e.*, motive, opportunity, intent, or absence of mistake or accident, and did not specifically limit the evidence to the issue of self-defense. Likewise, the trial judge did not provide an analysis regarding the admissibility of the evidence to rebut the self-defense evidence offered by Sadowski. Nonetheless, the determinative inquiry is whether the evidence of Sadowski's previous misconduct, more particularly his use of a weapon, was relevant to any issue of consequential fact, specifically, Sadowski's claim of self-defense.

As our court has interpreted *Charles,* once a defendant makes post-arrest statements that ' "may *arguably* be inconsistent with the trial story," ' he has raised a question of credibility. (citations omitted). The government, to provide all relevant evidence bearing on credibility, 'may probe all post-arrest statements and the surrounding circumstances under which they were made, including defendant's failure to provide critical details.' (citation omitted). *United States v. Makhlouta,* 790 F.2d 1400, 1404 (9th Cir.1986).

Sadowski contends that the prosecutor's redirect examination of a law enforcement officer who investigated the shooting of Hare, the prosecutor's cross-examination of Sadowski, and certain statements by the prosecutor during closing argument impermissibly commented on Sadowski's post-arrest silence in direct contravention of the mandate of *Doyle.* Contrary to this assertion, however, the court finds the inquiry into the post-arrest statements made by Sadowski to the investigating officers was proper to challenge the credibility of Sadowski and, accordingly, is not subject to the stricture of *Doyle.*

Immediately prior to his arrest at the scene of the shooting, Sadowski stated to the investigating officer that he had shot Hare. Immediately thereafter, Sadowski received *Miranda* warnings and made no further statements at the scene or during transport to a local jail facility. At the facility, however, Sadowski advised law enforcement officers that Hare had attacked him with a knife or some other "shiny weapon". During the course of cross-examining various law enforcement officials involved in the investigation of the shooting and incarceration of Sadowski, defense counsel made inquiry regarding Sadowski's statements as to the purported attack by Hare. In response, the prosecution upon redirect examination of the law enforcement officers and cross-examination of Sadowski, made specific inquiry as to the precise nature of the post-arrest statements made by Sadowski. Additionally, the prosecution argued in its closing statement that Sadowski's failure to produce exculpatory statements at an earlier time indicated that he had fabricated the exculpatory evidence in an effort to support his claim of self-defense.

Contrary to the argument of Sadowski, the prosecution's inquiry and comment regarding the post-arrest statements, when considered in the context of the trial as a whole, must be viewed as proper. Because Sadowski initiated inquiry into the substance of the statements for the purpose of bolstering his claim of self-defense, the prosecution was free to more fully explore the precise nature of the post-arrest statements, including details of those statements as they bore upon Sadowski's claim of self-defense. Consequently, Sadowski's claim that the prosecution's inquiry and comment regarding his post-arrest statements operated to deprive him of his due process right to a fair trial is without merit.

EXCULPATORY EVIDENCE

The final basis for relief advanced by Sadowski is that the state violated his right to due process by failing to collect and test potentially exculpatory evidence, more specifically, tools at the scene of the shooting which may have served as the weapon Sadowski claimed Hare had brandished. Sadowski suggests the prosecution's non-feasance was tantamount to a suppression of exculpatory evidence. The court disagrees.

The bad faith failure to preserve evidence constitutes a violation of a defendant's right to due process of law. *See, Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Likewise, the bad faith failure to collect potentially exculpatory evidence would similarly violate the due process clause. *See, Miller v. Vasquez,* 868 F.2d 1116, 1120 (9th Cir. 1989), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 1591, 113 L.Ed.2d 654 (1991). However, the mere failure to gather potentially exculpatory evidence does not violate due process. *Miller,* 868 F.2d at 1119–1120.

Sadowski contends the law enforcement officers charged with investigating the shooting intentionally, and in bad faith, failed to collect and preserve exculpa-

tory evidence. Specifically, Sadowski asserts the officers' failure to collect and preserve two screwdrivers and two pairs of pliers located in the immediate proximity of the shooting was the product of an intentional and bad faith effort by the state to preclude Sadowski from presenting fingerprint evidence that would have been consistent with his claim that Hare attacked him with a "weapon". In Sadowski's mind, the officers were undoubtedly aware of the importance of the fingerprint evidence to Sadowski's defense. Sadowski suggests that the bad faith nature of the officers' conduct is implicit in this act of nonfeasance because of the obvious resultant benefit to the prosecution.

For purposes of analysis, the court may assume the exculpatory value of the evidence at issue and acknowledge that Sadowski has satisfied the materiality prong of the test established in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), for determining when the failure to preserve evidence constitutes a due process violation. 467 U.S. at 488, 104 S.Ct. at 2533. Consequently, the determinative issue reduces to whether Sadowski has raised a colorable claim of bad faith sufficient to warrant an evidentiary hearing to resolve his petition for habeas corpus relief. The court finds he has not made a sufficient showing.

*Youngblood* established that negligence on the part of law enforcement officials in failing to preserve evidentiary material is not sufficient to constitute a denial of due process of law. 488 U.S. at 58, 109 S.Ct. at 337. Rather, a criminal defendant must establish the existence of "bad faith" on the part of law enforcement officials to establish such a denial. 488 U.S. at 58, 109 S.Ct. at 337. The court in *Youngblood*, however, did not undertake to define "bad faith" or specifically identify the type of conduct which might be considered as indicative of bad faith on the part of law enforcement officials. The Court did observe, however, that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." 488 U.S. at 57, 109 S.Ct. at 337. Two indicia of bad faith on the part of law enforcement officials acknowledged by lower courts are official animus and a conscious effort to suppress exculpatory evidence. *See, United States v. Nesbitt*, 852 F.2d 1502, 1520–21 (7th Cir.1988), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *Miller*, 868 F.2d 1120–21.[3]

In his direct appeal, Sadowski alleged the decision of the investigating law enforcement officers not to gather and fingerprint the various tools in the immediate proximity of the shooting was a conscious decision. Sadowski also implied the decision was the "functional equivalent" of a conscious effort to suppress exculpatory evidence. However, Sadowski neither points to, nor alleges the existence of any independent evidence that would establish the conclusory allegation that the law enforcement officers acted in a conscious effort to suppress evidence that would have had exculpatory value. Sadowski's allegations are simply insufficient to raise a colorable bad faith claim. Granted, the investigating officers' conduct may properly be characterized as negligent. However, negligence on the part of the officers does not constitute a denial of due process of law. *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337.

An additional point bears comment. In concurring in the judgment entered by the Court in *Youngblood*, Justice Stevens listed three factors which he deemed of critical importance in his evaluation of the case. 488 U.S. at 59, 109 S.Ct. at 338. The three factors may be summarized as follows: First, the incentive on the part of the state to preserve the disputed evidence; Second, the prejudice which resulted to the defendant in the presentation of his defense;

**3.** The referenced indicia are derived from the observation made by the Court in *Trombetta*. In rejecting the conclusion reached by the state appellate court that the State's failure to retain the breath samples at issue constituted a violation of the federal constitution, the Court placed particular significance on the fact the state court record contained "no allegation of official animus towards respondents or of a conscious effort to suppress the exculpatory evidence." 467 U.S. at 488, 104 S.Ct. at 2533.

and Third, the jury chose not to draw the permissive inference that the disputed evidence was material. 488 U.S. at 59–60, 109 S.Ct. at 338–339. Evaluation of the first two identified factors under the circumstances of the present case persuades the court that Sadowski was not denied his right to a fundamentally fair trial.

At the time the law enforcement officers made the decision not to gather numerous tools in the proximity of the shooting, the state arguably had an interest in preserving the evidence for purposes of fingerprinting and testing which was equally as compelling as Sadowski's interest. No more can be said of these tools than that they could have been subjected to fingerprint tests, the results of which may have exonerated the defendant. However, at the same time negative results may have proved detrimental to Sadowski's claim of self-defense. More importantly, however, the court is unable to conclude that the defendant was prejudiced by the failure of the state to test the tools for fingerprints. During the course of his cross-examination of the investigating officers and in his final summation, defense counsel sought to impress upon the jury that the fingerprint testing of the tools would have provided the necessary evidence to sustain Sadowski's claim of self-defense and thus exonerate him from the homicide charge. Under the circumstances of the case, the uncertainty created by the investigating officers' omission was utilized by Sadowski to create an inference of reasonable doubt, turning the omission to his advantage. Consequently, the court is unable to conclude that Sadowski was prejudiced by the state's omission. *See, e.g., Youngblood,* 488 U.S. at 60, 109 S.Ct. at 338.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the petition of Philip K. Sadowski requesting habeas corpus relief pursuant to 28 U.S.C. § 2254 be, and the same hereby is, DENIED.