972 F.2d 1340
 61 USLW 2128
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kwan Fai MAK, Petitioner-Appellee/Cross/Appellant,
v.
James BLODGETT, Superintendent, Washington State
Penitentiary at Walla Walla,
Respondent-Appellant/Cross/Appellee.
 Nos. 91-35256, 91-35615.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 24, 1992.
Decided July 16, 1992.
 
 Before BROWNING, TANG and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In this memorandum, we discuss and reject contentions raised in Mak's cross-appeal on grounds that do not merit publication.
 
 
 3
 * ARGUMENTS CONCERNING THE GUILT PHASE OF THE TRIAL
 
 
 4
 A. WAS MAK DEPRIVED OF THE RIGHT TO PRESENT A DEFENSE BY THE TRIAL COURT'S REFUSAL TO ADMIT EVIDENCE OF THE POSSIBLE INVOLVEMENT OF HING WONG?
 
 
 5
 The refusal of the trial court to admit circumstantial evidence that Hing Wong, a third party, and Ben Ng, Mak's co-defendant, had planned the massacre did not violate Mak's Eighth and Fourteenth Amendment rights.
 
 
 6
 Several factors must be balanced to determine if state evidentiary rulings have caused a violation of the defendant's constitutional rights. Perry v. Rushen, 713 F.2d 1447, 1452-53 (9th Cir.1983), cert. denied, 469 U.S. at 838 (1984).
 
 
 7
 On Mak's side of the balance, "[t]he right to present a defense is fundamental." Id. at 1450 (quoting Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). At the same time, "the state's legitimate interest in reliable and efficient trials is also compelling." Id. at 1451. Other factors must be considered:
 
 
 8
 In evaluating the significance of the evidence, the court should consider all of the circumstances: its probative value on the central issue, its reliability, whether it is capable of evaluation by the finder of fact, whether it is the sole evidence on the issue or merely cumulative, and whether it constitutes a major part of the attempted defense. The weight of the state's interest likewise depends on many factors. The Court must determine the purpose of the rule, its importance, how well the rule implements this purpose, and how well the purpose applies in the case at hand. The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, in excluding unreliable or prejudicial evidence.
 
 
 9
 Id. at 1452-53.
 
 
 10
 Mak argues that the proffered evidence was a major part of his defense to capital murder; that evidence Hing Wong planned the incident, coupled with testimony that Mak was not privy to the plan, would raise doubt as to the essential element of premeditation. Although the evidence is quite probative on the issue of Hing Wong's involvement, it is not strongly probative of Mak's premeditation. Assuming Hing Wong was the ring leader, Mak could still have premeditated the murders.
 
 
 11
 Moreover, the reliability of the evidence is questionable. The fact that Hing Wong planned to control gambling in Chinatown was to be established by testimony of Steve Chin that he overheard such an assertion by Wong in a 1980 conversation. 8 REC 3048. The defense's proposed corroborating witness, Andy Wong, renounced his statement, and the defense intended to rely instead upon the double hearsay testimony of Detective Buckland, to whom Andy Wong allegedly had passed the information. 8 REC 3055. The fact that Wong set the massacre in motion was to be established by testimony of Lieutenant Holter that he had been so informed by a confidential informant, 8 REC 3050, whose identity was not revealed. To establish that Wong had arranged for murder of rival gang members, the defense intended to call certain witnesses who would testify that Wong had given them guns, but that they had returned them without committing any shootings. 8 REC 3058. To show that Wong had offered to sell Ben Ng a bulletproof vest, the defense proposed to rely upon the testimony of a third party to the effect that Ng had told him of the offer. 11 REC 3854.
 
 
 12
 On the state's side, the purpose of the rule, as the Perry court noted, is "to avoid undue prejudice to the [state] from unsupported jury speculation as to the guilt of other suspects." 713 F.2d at 1453 (citation omitted). In this case, as in Perry, there was substantial danger that the jury would be diverted from consideration of Mak's guilt or innocence to consideration of the guilt or innocence of Wong, who was not indicted. This danger of jury confusion is "a significant factor in the balance." Id. The weight to accord to the danger depends on how extraneous the evidence is. As noted, the probity of the evidence on the issue of Mak's premeditation is fairly weak; as in Perry, the evidence sought to be introduced "falls far short of the critical and reliable evidence considered in Chambers and Webb." Id. at 1455. The state court acted within its constitutional discretion in deciding on balance to exclude it.
 
 
 13
 B. WAS MAK DENIED HIS SIXTH AMENDMENT CONFRONTATION RIGHTS BY THE TRIAL COURT'S LIMITATIONS ON CROSS EXAMINATION FOR BIAS OF TWO PROSECUTION WITNESSES?
 
 
 14
 The refusal to allow cross-examination for bias of two prosecution witnesses, Yen Lau and Bon Chin, did not violate Mak's sixth amendment confrontation rights. The trial court held it was not constitutional error to deny cross-examination of Lau on the ground there was insufficient foundation to establish bias, since Lau had provided the police all the information concerning Mak to which he testified before the Red Lotus robbery or Lau's possible involvement in it came to light. 7 REC 2576. The trial judge also ruled that cross-examination of Chin regarding the Red Lotus robbery would "open the door" to re-direct examination regarding Mak's involvement in the same robbery. Id. at 2570.
 
 
 15
 Although we are concerned about the possible violation of Mak's sixth amendment rights under Davis v. Alaska, 415 U.S. 308 (1974), we agree that any error was harmless. In Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986), the Supreme Court stated: "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman harmless-error analysis."
 
 
 16
 Mak argues the error could not be considered harmless beyond a reasonable doubt because the testimony of the two witnesses was crucial in developing the state's theory that Mak planned the massacre, an idea that may have led the jury to impose the death penalty. Although the testimony of these two witnesses was important to the theory that Mak was the leader, it was not particularly critical on the central issue of guilt or innocence. The backbone of the prosecution's case was the eyewitness testimony of Wai Chin, the sole survivor of the massacre.
 
 
 17
 Moreover, the gist of the testimony of the two witnesses (that Mak had a long standing interest in robbing a gambling club), was corroborated by Wai Chung Tam's testimony that Mak discussed the possibility of robbing the Wah Mee with him, and said he would use a gun because a lot of people in Chinatown knew him, 8 REC 2896-97, and by the testimony of Sze Ming Ng that Mak had spoken to him about robbing a gambling club. Id. at 3083.
 
 
 18
 C. WAS MAK'S SIXTH AMENDMENT RIGHT TO CONFRONTATION VIOLATED BY THE PROSECUTION'S QUESTION TO A WITNESS DESIGNED TO ELICIT A DAMAGING HEARSAY STATEMENT BY A CO-DEFENDANT?
 
 
 19
 During questioning of one of Mak's witnesses, the prosecutor asked if Ng had told the witness that Mak had done all the shooting. Defense counsel's objection was sustained and the question stricken. Mak contends asking the question was in itself a violation of Bruton v. United States, 391 U.S. 123, 137 (1968), and Douglas v. Alabama, 380 U.S. 415, 420 (1965). Bruton and Douglas are inapplicable. Bruton involved the introduction of evidence--a co-defendant's confession inculpating Bruton; in Douglas the equivalent of testimony was presented. In this case, there was no introduction of evidence or its equivalent; there was only the unanswered question of the prosecutor.
 
 
 20
 We treat the prosecutor's improper question as prosecutorial misconduct. In reviewing a claim of prosecutorial misconduct, we examine the entire proceeding "to determine whether the prosecutor's remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Hall v. Whitley, 935 F.2d 164, 165 (9th Cir.1991) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).
 
 
 21
 Under this standard, Mak's argument is without merit. The prosecution's question improperly suggested to the jury that Mak was the principal gunman although the State had earlier maintained that Ng shot most of the victims. State v. Mak, 718 P.2d 407, 451 (Wash.1986) (Utter, J., dissenting). However, Mak cannot demonstrate prejudice. Mak himself told the police that he shot all of the victims at the Wah Mee. 7 Rec. 2517, 2524. In addition, the substance of the improper remark was cumulative; there was abundant evidence, including eye-witness testimony and Mak's own admissions, that Mak participated actively in the murders.
 
 
 22
 D. WAS THERE PROSECUTORIAL MISCONDUCT IN THE GUILT PHASE CLOSING ARGUMENT, RENDERING MAK'S TRIAL FUNDAMENTALLY UNFAIR?
 
 1. Inflammatory, Prejudicial Remarks
 
 23
 Mak alleges statements by the prosecutor in his closing remarks sought to appeal to the juror's passions and fears. On federal habeas, Mak must show that the remarks, taken in context, denied him a fundamentally fair trial. Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974). The magistrate noted that Mak's attorneys did not object to the arguments now challenged, and held Mak had not been denied a fair trial under a plain error standard of review. 198 ER 29.
 
 
 24
 (a) Mak argues the M-1 argument was comparable to the argument found to be improper in United States v. McRae, 593 F.2d 700, 706 (5th Cir.), cert. denied, 444 U.S. 862 (1979). McRae was a direct appeal from a federal district court. The prosecutor's argument was evaluated under the Court's broad supervisory powers, not under the stringent standards applicable in determining whether a violation of due process has occurred. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). Although the remark was found objectionable under this broad standard, the conviction was not reversed because the evidence against McRae was overwhelming. Even if considered improper, the M-1 remark in this case was not egregious, and Mak cannot show prejudice. The evidence of Mak's participation in the activities at the Wah Mee which led to the murders was overwhelming.
 
 
 25
 (b) We agree with Mak that the prosecution's reference in rebuttal to Mak's testimony as a lie that "rips through the bodies of the victims like another bullet. Rips through their families and relatives, rips through Wai Chin," was an improper appeal to pure passion even under the tolerant standard applied to the "invited response." See United States v. Young, 470 U.S. 1, 11-14 (1985).
 
 
 26
 But Mak has failed to show the comment deprived him of a fair trial under the standard applied in Darden, 477 U.S. at 181, to remarks far more egregious. Id. at 180, n. 12.
 
 
 27
 (c) Mak asserts the prosecutor improperly vouched for the eye-witness Wai Chin, particularly when he told the jury Wai Chin's survival was an "Act of God" to ensure justice would be done. Mak also complains that the prosecutor expressed his personal opinion that Mak was guilty.
 
 
 28
 Although "[t]he government may not vouch for the credibility of its witnesses, either by putting its own prestige behind the witness, or by indicating that extrinsic information not presented in court supports the witness' testimony," United States v. Simtob, 901 F.2d 799, 805 (9th Cir.1990), lawyers are allowed reasonable latitude in closing argument and may strike hard blows based upon the testimony and its inferences. United States v. Birges, 723 F.2d 666, 672 (9th Cir.), cert. denied, 466 U.S. 943, 469 U.S. 863 (1984). In context, the prosecutor's comment was not a representation that God vouched for the testimony of Wai Chin, but an attempt to emphasize the central importance of Wai Chin's testimony. There were no statements by the prosecutor that it was the prosecutor's personal opinion that Mak was lying. The prosecutor's attacks on Mak's veracity were presented as inferences to be drawn from other testimony inconsistent with Mak's testimony. In effect, the prosecutor argued in favor of the accuracy of the prosecutor's version of the facts. This was not improper.
 
 
 29
 (d) Mak asserts the prosecution sought to "bully" the jury out of a reasoned consideration of the alternative of convicting Mak of first degree felony murder rather than aggravated first degree murder. The district court correctly ruled that the government had a right to argue that the jury should convict Mak of the more serious crime. The prosecutor's argument was strong, but neither misleading nor improper.
 
 2. Irreconcilable Closing Arguments
 
 30
 Mak argues the prosecutor violated due process by taking inconsistent positions regarding the roles of Mak and Benjamin Ng in respect to the .22 Ruger semiautomatic pistol through which 26 shots were fired at the Wah Mee. See Drake v. Kemp, 762 F.2d 1449, 1478-79 (11th Cir.1985) (en banc) (Clark, J. concurring in grant of habeas corpus), cert. denied, 478 U.S. 1020 (1986). Mak also argues that his due process claim is supported by the doctrine of judicial estoppel. Russell v. Rolfs, 893 F.2d 1033, 1037-39 (9th Cir.1990), cert. denied, 111 S.Ct. 2915 (1991).
 
 
 31
 We agree with the district court's conclusion that the prosecution did not take inconsistent positions at the trials of the co-defendants. 198 ER 18-19. We also agree with the Washington Supreme Court's decision that there was only one arguable inconsistency--who owned the gun; and this inconsistency was not prejudicial because it had no bearing on the basic issues of the trial. 718 P.2d at 414.
 
 
 32
 E. WAS MAK DENIED HIS SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS BY THE FAILURE OF THE TRIAL COURT TO REQUIRE JURY UNANIMITY?
 
 
 33
 Mak asserts the trial court's failure to give a general unanimity instruction deprived him of due process. The Washington Supreme Court held that although the state trial court failed to give the standard instruction, ("Since this is a criminal case, all twelve of you must agree for you to return a verdict ...,"), instructions No. 7 and 15 sufficiently informed the jury of the requirement of unanimity and "the polling of the jury established that the omission from the concluding instruction did not affect the final outcome of the case, thus was no more than harmless error in any event." 718 P.2d at 434. We agree.
 
 
 34
 Although the jury was instructed that it must unanimously agree that Mak "committed the murders to conceal the commission of the crime" beyond a reasonable doubt--and did so, Mak contends the jury should also have been required to determine unanimously and beyond a reasonable doubt what specific crime Mak sought to conceal. The Washington Supreme Court has rejected Mak's construction of the statute. In State v. Jeffries, 717 P.2d 722 (Wash.), cert. denied, 479 U.S. 922 (1986), the court held:
 
 
 35
 The specific crime need not be stated, as the statute does not require it. It is true that the process requires proof beyond a reasonable doubt that the defendant committed the murders to conceal his identification as the person committing a crime. Due process, however, does not require that the specific crime be charged and included in the jury instructions.
 
 
 36
 Id. at 735.[1] Federal due process requires no more. See Schad v. Arizona, 111 S.Ct. 2491, 2497, 2499 (1991) (a state may define a crime to include alternative means of committing the crime--due process does not require the state to treat those alternative means as separate elements or separate crimes).
 
 
 37
 F. WAS MAK'S RIGHT TO DUE PROCESS VIOLATED WHEN THE TRIAL COURT DENIED HIM ACCESS TO APPROXIMATELY 800 PAGES OF POLICE STATEMENTS AND REPORTS?
 
 
 38
 The state contends that Mak's speculation that the police files might contain Brady material is not sufficient to require this court to conduct an in camera review of the approximately 800 pages of police reports not provided to defense counsel because they allegedly did not contain exculpatory material. We agree. "In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987) (footnote and citation omitted). Although Mak makes only a general request, the district court conducted an in camera review and held that the prosecution had fully complied with its responsibilities under Brady, see Mak v. Blodgett, 754 F.Supp. 1490, 1493 (W.D.Wash.1991). Mak has already received more than he was entitled to under Ritchie.
 
 
 39
 G. DOES NEWLY DISCOVERED EVIDENCE OF TONY NG'S TESTIMONY WARRANT HABEAS RELIEF?
 
 
 40
 Tony Ng, one of Mak's co-defendants, fled to Canada after the robbery and killings, and was not apprehended until after Mak had been tried and sentenced. Ng was then extradited to the United States and tried. He testified at his own trial. Mak maintains that certain of Ng's testimony is new evidence, warranting the grant of habeas relief. As applied to the guilt phase of Mak's trial, we disagree.[2]
 
 
 41
 In order to grant habeas relief for newly discovered evidence, it must appear the evidence (1) is new and (2) more likely than not would have resulted in the defendant's acquittal at trial. See Gordan v. Duran, 895 F.2d 610, 614 (9th Cir.1990); Quigg v. Crist, 616 F.2d 1107, 1112 (9th Cir.1980). We examine first the second prong of this test.
 
 
 42
 Mak asserts that Tony Ng's testimony would have created doubt as to whether the essential element of premeditation had been satisfied, because it would corroborate his own arguments to that effect. It is true that some of Ng's testimony does tend to corroborate Mak's account of the events. For example, Ng testified that Mak's plan in going to the Wah Mee was only to administer a retaliatory beating. He also testified that it was Benjamin Ng who first mentioned a robbery.
 
 
 43
 However, much of Tony Ng's testimony is not corroborative of Mak's story. Ng testified that Mak told him that Friday night would be the best time to rob the Wah Mee. He also testified Mak told him to tie people up once they entered the Wah Mee. Additionally, Ng testified at great length of his fear that Mak would kill him if he did not accompany him to the Wah Mee, or if he went to the police.
 
 
 44
 Because of the mixed nature of Tony Ng's testimony, its persuasiveness as an argument to the jury is diminished. Furthermore, Ng's testimony is not strongly probative of Mak's lack of premeditation. It is therefore very doubtful that its mere addition would have resulted in Mak's acquittal at trial. Accordingly, we hold that denial of habeas relief because of this newly discovered evidence as applied to the guilt phase of Mak's trial was proper.[3]
 
 II
 
 45
 ARGUMENTS CONCERNING THE PENALTY PHASE OF THE TRIAL
 
 A. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 46
 In addition to the arguments considered in the published portion of this disposition, Mak contends he lacked effective assistance of counsel at the penalty phase on several grounds we find to be without merit.
 
 
 47
 Mak claims counsel's failure to introduce the special verdict form from Ben Ng's trial constituted ineffective assistance because without the information contained in the form, Mak's jury had no basis for comparing his culpability to that of Ng. In particular, the Mak jury did not know Ng's jury determined Ng had participated in a common scheme or plan, making him more culpable than Mak, who was not found to have entered into such a common scheme or plan. However, during the penalty phase, defense counsel did introduce Ng's verdict showing Ben Ng had received a life sentence rather than death and argued to the jury that Mak's sentence should be equitably tied to Ng's sentence. We agree with the district court that these actions met Strickland's standard for reasonable performance, because "the sentencing decision is based on the presence or absence of mitigating factors, not on the type of aggravating circumstances found," and since the special verdict form concerned aggravating factors rather than mitigating factors, there is no reason to think the jury would have found it mitigating. 198 E.R. 12.
 
 
 48
 Even if failure to present the special verdict form could be considered deficient performance, Mak did not suffer prejudice. The jury had sufficient information to evaluate proportionately the equity of the sentences rendered. Mak's jury was exposed to more incriminating evidence about Ben Ng than Ng's jury was, including testimony at trial that Ben Ng was involved in a prior murder, 718 P.2d at 428, and Mak's jury heard counsel's argument that it would be unfair to impose a greater penalty on Mak since he and Ng were convicted for the same crime.
 
 
 49
 Mak claims defense counsel's failure to request a jury instruction on the presumption of leniency established by Washington's death penalty statute was ineffective assistance. However, instructions and argument adequately informed the jury that a life sentence would be imposed if the prosecution failed to prove an absence of mitigating circumstances meriting leniency. Lacking prejudice, the issue of deficient performance need not be reached.
 
 
 50
 Mak argues counsel's failure to correct the impression that his defense expert, Dr. Loftus, failed to interview the eyewitness because of neglect (rather than a lack of access to the witness) constituted ineffective assistance. However, as the magistrate found, the impression was corrected during closing argument. 198 ER 7.
 
 
 51
 B. WAS MAK DEPRIVED OF A FAIR PENALTY PROCEEDING BY THE PROSECUTION'S REFERENCE TO EVIDENCE OUTSIDE THE RECORD AND THE PROSECUTION'S COMMENT ON ONE OF THE STATUTORY MITIGATING FACTORS?
 
 
 52
 During penalty phase argument, Mak's counsel brought before the jury the fact that Benjamin Ng had received a sentence of life in prison without parole and urged the jury to impose the same sentence. In response, the prosecution reminded the jury that they were not present during the Benjamin Ng trial, and that they didn't know how much that jury knew about Ng. Then the prosecutor said, "[b]ut you also don't know about what mitigating circumstances were presented in the Benjamin Ng trial. You know some of it because you heard some of the psychiatric and psychological testimony, but you didn't hear all of it.... how can you be asked to base your vote now on what another jury did under different circumstances, hearing different facts, hearing different reasons to lessen the moral culpability of the person before them." 11 Rec. 4166-67.
 
 
 53
 Mak argues that the prosecutor's comment was improper because it suggested to the jury that it base its decision on its speculation that the prosecutor knew something the jury did not. Viewed in context, the prosecutor's comments were responses in kind to the defendant's "equality" argument and would not warrant reversal, much less the granting of habeas relief. See United States v. Young, 470 U.S. 1, 12-13 (1985) ("if the prosecutor's remarks were 'invited' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."); accord United States v. Tham, 665 F.2d 855, 862 (9th Cir.1981), cert. denied, 456 U.S. 944 (1982).
 
 
 54
 Mak asserts that the prosecutor's argument that age was not a sufficient reason for leniency in this case prejudiced the jury's evaluation of this factor. Washington law requires the jury to consider any relevant mitigating factor, Wash Rev.Code Ann. § 10.95.070, including "[w]hether the age of the defendant at the time of the crime calls for leniency." Id. at § 10.95.070(7). The government argues, and we agree, that the prosecutor's remarks were sufficiently tempered by the acknowledgment that the jury could find age a mitigating factor if it chose to do so.
 
 
 55
 C. DOES THE DISPARITY IN SENTENCES BETWEEN MAK AND BEN NG CONSTITUTE A VIOLATION OF THE EIGHTH AMENDMENT?
 
 
 56
 Mak argues that his Eighth Amendment rights were violated because Ben Ng, the co-defendant who the state admits fired most of the shots, received a sentence of life without parole, while Mak received the death penalty.
 
 
 57
 The constitution does not require a general proportionality review in death penalty cases. See Pulley v. Harris, 465 U.S. 37, 43-44 (1984). None of the cases cited by Mak support the proposition that the eighth amendment requires that co-defendants convicted of the same crime receive the same sentence. The disparity in sentences in this instance may be explained by the fact that the Ng jury was presented with evidence of mitigating circumstances, while the Mak jury was not, a matter dealt with in the published portion of this disposition.
 
 
 58
 D. DID THE JURY INSTRUCTIONS UNCONSTITUTIONALLY LIMIT CONSIDERATION OF MITIGATING CIRCUMSTANCES AND PERMIT CONSIDERATION OF AGGRAVATING FACTORS IN A WAY PREJUDICIAL TO MAK?
 
 
 59
 Mak contends the penalty phase jury instructions misled the jury because mitigating factors were always referred to in the plural, leading the jurors to believe they must find more than one mitigating factor to find sufficient mitigation to merit leniency. Further, the jury was not instructed that a single mitigating circumstance could be sufficient to merit leniency.
 
 
 60
 To obtain habeas relief concerning a challenged jury instruction, the petitioner must show that there is a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution. Estelle v. McGuire, 112 S.Ct. 475, 482 (1991). We review the jury instructions and the verdict form in their context and under all the circumstances, including arguments of counsel, Cupp v. Naughten, 414 U.S. 141, 147 (1973), to decide whether there was a reasonable probability that the jury was misled, thus violating Mak's Eighth Amendment right to have the jury consider any relevant mitigating evidence offered. See Eddings v. Oklahoma, 455 U.S. 104, 113-14 (1982).
 
 
 61
 The jury was instructed that the absence of "any" mitigating circumstances justified the death penalty; and obviously "any" includes "one." Mak points to no instruction or argument that one mitigating circumstance was not enough to warrant rejection of a death verdict. The jury instructions clearly state that mercy alone was a sufficient mitigating factor for the jury to reject a death verdict. There is no reasonable probability that the jury applied the instructions in violation of Mak's Eighth Amendment rights.
 
 
 62
 Mak challenges the instructions on the ground they gave the jury an open-ended opportunity to consider any relevant factors without guidance from the court on what relevant factors could be considered, and thus allowed the jury to improperly consider non-statutory aggravating factors. We addressed this issue in Campbell v. Kincheloe, 829 F.2d 1453, 1458-59 (9th Cir.1987), cert. denied, 488 U.S. 948 (1988), and held that instructing the jury to consider "any relevant factors" gave the jury proper guidance. As the government correctly notes, "the State cannot channel the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant." McCleskey v. Kemp, 481 U.S. 279, 306 (1987).
 
 
 63
 Appeal No. 91-35256 is AFFIRMED.
 
 
 64
 Appeal No. 91-35615 is AFFIRMED and REMANDED for entry of an appropriate order in accordance with the published opinion filed in this case.
 
 
 
 *
 This disposition is not appropriate for publication and may not by cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 State courts are the ultimate expositors of state law and their construction of that law is binding on the federal courts. See, e.g., Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)
 
 
 [2]
 In our separate published opinion, we affirm the district court's grant of habeas relief for the purpose of resentencing. At note 16, we found that the sentencing court's exclusion of Tony Ng's trial testimony was one of several significant errors that, when considered cumulatively, compel affirmance of the district court's decision to require resentencing of Mak
 
 
 [3]
 Because Mak's argument fails to satisfy the second prong of the Gordan test, we need not consider whether Tony Ng's testimony constitutes "new" evidence